**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

BRANDON LEE,

                          Plaintiff,

                v.                                          No. 12-CV-1018
                                                                  (FJS/CFH)
MICHAEL GRAZIANO, Superintendent,
Greene Correctional Facility,

                          Defendant.[1]

---

**APPEARANCES:**                          **OF COUNSEL:**

BRANDON LEE
Plaintiff Pro se
6 Rainbow Lane
Amityville, New York 11701


HON. ERIC T. SCHNEIDERMAN          CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the                      Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

   Plaintiff pro se Brandon Lee ("Lee"), an inmate in the custody of the New York State

---

   [1] By Memorandum-Decision and Order dated September 25, 2012, the Court ordered that all claims against Defendant Commissioner Brian Fischer in his official capacity be dismissed with prejudice and all claims in Fischer's individual capacity be dismissed without prejudice and with leave to replead. Dkt. No. 12 at 10. As of the date of this report-recommendation, Lee has not replead allegations against Fischer.

   [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Department of Corrections and Community Services ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Graziano, the superintendent of Greene Correctional Facility ("Greene Correctional"), violated his constitutional rights under the Eighth Amendment. Am. Compl. (Dkt. No. 13). Presently pending is Graziano's motion for a judgment of dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 20. Lee has no response to defendant's motion.[3] Dkt No. 22. For the following reasons, it is recommended that Graziano's motion be denied.

## I. Background

The facts are related herein in the light most favorable to Lee as the non-moving party. See subsection II(A) infra.

On or about April 20, 2012, Lee requested the use of either a shower chair and/or railings from defendant Superintendent Graziano and unnamed Corrections Officer John Doe #1 due to his having one leg. Am. Compl. at 4–5. Doe #1 stated, "[y]ou don't get any special treatment here at Greene Correctional facility and hop on one leg in the shower area." Id. at 4. Lee then filed a grievance concerning this denial, which was ignored by Greene corrections officials. Id. at 4–5. On or about May 18, 2012, Lee slipped and fell onto his face in the shower, bruising his nose and fingers. Id. at 5. Lee filed another grievance regarding this issue as well as the poor sanitation in the showers, which Lee described as being "overflowed with urine" that made contact with his one leg, and no cleaning supplies were issued upon request. Id. at 5. Without access to a shower chair or

___

[3] By letter dated November 5, 2012, Lee advised the Court that he "will not be responding to Defendant Michael Graziano's motion to dismiss." Dkt. No. 22 at 1.

railing, Lee did not shower for two months out of concern for falling again or contracting an

infection.  Id.  Lee also contends that his foot was infected due to the unsanitary shower

conditions.  Id.  This action followed.


## II.  Discussion

### A.  Legal Standard

In deciding a Rule 12(c) motion for judgment on the pleadings, "we 'employ[ ] the same

standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6).'"  Hayden v.

Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (citation omitted).  Under Fed. R. Civ. P.

12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon

which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When considering such a motion, a

court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v.

N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009); see also Erickson v. Pardus, 551 U.S.

89, 94 (2007).  However, this "tenet is inapplicable to legal conclusions, and threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that

is "plausible on its face."  Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability

requirement . . . it simply calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d

559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts

to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether

plausibility exists is "a content specific task that requires the reviewing court to draw on its

judicial experience and common sense."  Iqbal, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments that
> they suggest.  At the same time, our cases have also indicated
> that we cannot read into pro se submissions claims that are not
> consistent with the pro se litigant's allegations or arguments that
> the submissions themselves do not suggest that we should not
> excuse frivolous or vexatious filings by pro se litigants, and that
> pro se status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous

to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a

court is obliged to construe his pleadings liberally.'" (citations omitted)).


## B.  Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available

administrative remedies before he can bring an action with respect to prison conditions

pursuant to any federal law.  See 42 U.S.C. § 1997e(a) (codification of exhaustion

requirement); Woodford v. Ngo, 548 U.S. 81, 93–103 (2006). "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)). "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 305 (quoting Woodford, 548 U.S. at 90) (emphasis in original).

"[F]ailure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam ) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). Like other affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) if the defense appears on the face of the complaint. See Jones, 549 U.S. at 215 (discussing the PLRA exhaustion requirement: "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground . . . ."). Before dismissing a prisoner's complaint for failure to exhaust, "a court is 'obligated to establish the availability of an administrative remedy from a legally sufficient source['] . . . ." Mojias v. Johnson, 351 F.3d 606, 609 (2d Cir. 2003) (citation omitted). "Since the availability of administrative remedies for an inmate's particular grievance is typically not clear from the face of a complaint, the better practice in a given case may be to afford notice and an opportunity to respond before dismissal when exhaustion is the basis for that action." Id. at 610 (holding that notice and an opportunity to respond are necessary before deciding whether sua sponte dismissal for failure to exhaust is appropriate).

"The exhaustion defense is one that is not particularly well-suited for resolution for a

5

motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred." See Lewis v. Havernack, No. 12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *4 (N.D.N.Y. Mar. 28, 2013) (quoting Laporte v. Fisher, No. 11-CV-9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." (citations omitted)).[4]  In this instance, plaintiff's complaint alleges that he filed more than one grievance related to the facts in his complaint, his grievances could not be remedied, and all of his complaints were ignored.  Am. Compl. at 2–5.  Given these allegations, which are contained within the four corners of Lee's complaint, there is no clear indication that Lee failed to exhaust his administrative remedies.  Conversely, there is sufficient doubt as to whether plaintiff exhausted his administrative remedies to deny Graziano's motion on this ground.  See Laporte, 2012 WL 5278543, at *5 (holding that, absent a clear indication from the face of the complaint that a plaintiff has failed to exhaust, dismissal pursuant to Rule 12(b)(6) is not appropriate).

"While defendants have submitted extrinsic evidence, including the Hale declaration, calling into question [Lee's] representation that exhaustion has been accomplished, such extrinsic materials are not properly considered on a motion to dismiss." Lewis, 2013 WL 1294606, at *4.  One possible solution is converting Graziano's motion to a motion for summary judgment, pursuant to Rule 12(d); thus, the extrinsic materials would then properly be considered. McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss

---

[4]  All unpublished cases will be annexed as exhibits to this Report and Recommendation.

6

should be converted . . . to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust . . . .").  As Lee has not been put on notice that such a conversion was possible, or of the potential consequences of a conversion, such an action is not presently favored.  See id. (quoting Hernandez v. Coffey, 582 F.3d 303, 308 (2d Cir. 2009) ("[A]bsent a clear indication that the pro se litigant understands the nature and consequences of Rule 56 [governing motions for summary judgment] . . . he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." (internal quotation marks and citation omitted)).

Accordingly, Graziano's motion on this ground should be denied without prejudice and Graziano may raise the exhaustion defense when it can be analyzed based on a more fully developed record.

### C.  Eighth Amendment

### 1.  Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;

> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).[5]

Lee alleges that he requested shower accommodations from Graziano and filed grievances for incidents that occurred due to the denial of such accommodations. It is well established that when a "supervisory official like [a] prison Superintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable." Walker v. Pataro, No. 99-4607 (GBD/AJP), 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002). A supervisor's capacity involves "hiring, firing, or disciplinary power over . . . supervisory staff or personnel of the correctional facilities . . . [or] direct power to control or direct the customs and policies of the facilities." Brody v.

---

[5] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

McMahon, 684 F. Supp. 354, 356 (N.D.N.Y. 1988) (explaining the difference between the advisory role fulfilled by the Commissioner of Corrections and contrasting the powers of such with a defendant in a supervisory position).

In this case, viewing the facts in the light most favorable to the plaintiff, Lee has alleged a plausible claim that Graziano was responsible for creating a blanket policy that precluded inmates with disabilities from receiving shower chairs or railings. As a superintendent, it was within Graziano's purview to direct staff, formulate policies for the effective operation of Greene Correctional, and ensure that corrections staff comply with such policies. "[A] superintendent is properly retained in a lawsuit at the stage of a Rule 12(b)(6) motion where he is alleged not only to have rejected the grievance . . . but also to have been responsible for the challenged prison condition in his capacity as a supervisor of the correctional facility." Lamzot v. Phillips, No. 04-CV-6719 (LAK), 2006 WL 686578, at *7 (S.D.N.Y. Mar. 16, 2006) (citation omitted)); see also Montalvo v. Koehler, No. 90-CV-5218 (LJF), 1992 WL 396220, at *3 (S.D.N.Y. Dec. 21, 1992) (explaining that an unofficial custom of placing wheelchair bound inmates in general population without appropriate handicap accessibility was sufficient to establish a constitutional violation unless and until the further development of the record discounting that question of material fact). Further, liberally construing Lee's complaint, Correctional Officer John Doe #1's alleged statement of, "you don't get any special treatment here at Greene Correctional Facility," creates a question of fact with respect to Greene Correctional's policy for providing shower accommodations to inmates with disabilities and how that policy was articulated to employees and enforced. This, along with the lack of evidence at this time showing any shower accommodations for inmates with disabilities, which bolsters Lee's liberally construed claims of an unconstitutional policy,

9

leads to a recommendation denying Graziano's motion without prejudice, allowing Graziano

an opportunity to raise these arguments at a point when it can be analyzed based upon a

more fully developed record.

Accordingly, Graziano's motion on this ground should be denied without prejudice and

Graziano may raise the personal involvement defense when it can be analyzed based upon

a more fully developed record.

## 2. Plausibility

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

punishment." U.S. CONST. amend. VIII. "The Constitution does not mandate comfortable

prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a

prisoner receives in prison and the conditions under which he is confined are subject to

scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Conditions of confinement claims require that a plaintiff satisfy both an objective

component—was the alleged deprivation sufficiently serious?—and a subjective

component—did the officials act with a sufficiently culpable state of mind?. Wilson v.

Seiter, 501 U.S. 294, 297–304 (1991); see also Phelps v. Kapnolas, 308 F.3d 180, 185 (2d.

Cir. 2002).

Only allegations of an "extreme deprivation" satisfy the objective component of a

conditions-of-confinement claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992). "Because

routine discomfort is part of the penalty that criminal offenders pay for their offenses against

society . . . only those deprivations denying the minimal civilized measure of life's

necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id.

(internal quotation marks omitted); see also Davidson v. Murray, 371 F. Supp. 2d 361, 270 (W.D.N.Y. 2005) ("Nothing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.")

However, such deprivations include a failure to provide for an inmate's physical safety. See Lamzot, 2006 WL 686578, at *5. "Claims of such deprivations are generally found to be sufficiently grave when they involve the possibility of serious pain or injury." Montalvo, 1992 WL 396220, at *4 (collecting cases) citing inter alia Rivera v. Dyett, No. 88-CV-4707 (PKL), 1992 WL 23388, at *8 (S.D.N.Y. Sept. 10, 1992) ("[i]n order to perform the essential bodily functions of toileting and showering, Plaintiff must subject himself to the strong possibility of a serious bodily injury"; therefore Eighth Amendment violated); Ruiz v. Estelle, 503 F. Supp. 1265, 1345–36 (S.D.Tex. 1980), aff'd in part and vacated in part on other grounds, 679 F.2d 1115 (5th Cir.), amended in part and vacated on other grounds, 688 F.2d 266 (5th Cir. 1982), cert. denied, 103 S. Ct. 1438 (1983) (lack of special accommodations of handicapped caused painful or severe physical difficulties in violation of Eighth Amendment)). "An Eighth Amendment claim may also be asserted where prison officials deliberately disregard the unique needs of a disabled inmate." Carlson v. Parry, No. 06-CV-6621P, 2012 WL 1067866, at *7 (W.D.N.Y. Mar. 29, 2012) (citing cases). However, "the denial of access to . . . handicap-accessible showers, in and of itself, does not place an inmate in imminent danger of serious physical injury." Escalera v. Graham, No. 08-CV-412 (GLS/GHL), 2008 WL 4200128, at *3 (N.D.N.Y. Sept. 8, 2008) (denying imminent danger exception to inmate alleging speculative and unrealized possible harms).

In the present case, Lee contends something more than a general inaccessibility to handicap showers. "The method by which [Lee] is forced to shower subjects him to the

11

possibility of serious bodily injury."[6]  Montalvo, 1992 WL 396220, at \*4 (footnote omitted).

According to Lee's complaint, there are currently no accommodations such as railings or

shower chairs for inmates with disabilities.  Accordingly, Lee is forced to hop in and out of

the wet shower and balance on one leg without the assistance of any device to help steady

him.  "A slip in the shower for a person with full use of his limbs has the potential to cause

grave injury; a fall in the showers available in general population would leave [an inmate

with a disability such as Lee] . . . even more vulnerable to serious injury."  See Montalvo,

1992 WL 396220, at \*4.  Given Lee's allegations, Lee has stated a plausible claim in that

the lack of access for inmates with disabilities to shower accommodations creates the

potential for serious injury.

Accordingly, Graziano's motion on this ground should be denied.

### 3.  Conditions of Confinement

"[W]e have long recognized that unsanitary conditions in a prison cell can, in egregious

circumstances, rise to the level of cruel and unusual punishment."  Walker v. Schult, No.

12-1806-CV, 2013 WL 2249159, at \*6 (2d Cir. May 23, 2013) (citing inter alia Lareau v.

Manson, 651 F.2d 96, 106 (2d Cir.1981) (noting that prisoners are entitled to, inter alia,

sanitation); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972) ("Causing a man to

live, eat and perhaps sleep in close confines with his own human waste is too debasing and

---

[6]  Though at this time there are no official records documenting Lee's injuries he sustained after falling in the shower, actual injury is not necessary to show that a policy exhibits reckless indifference to Lee's safety.  See Rivera, 1992 WL 233882, at \*8 (Eighth Amendment violation found, even though plaintiff was never actually injured while using inadequate showering facilities).

12

degrading to be permitted")).  Even unsanitary conditions that last for mere days may

amount to an Eighth Amendment violation.  Id. (citing Gaston v. Coughlin, 249 F.3d 156 (2d

Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell

"was filled with human feces, urine, and sewage water" for several consecutive days);

Wright v. McMann, 387 F.2d 522, 526 (2d Cir. 1967) (placement of prisoner for thirty-three

days in cell that was "fetid and reeking from the stench of the bodily wastes of previous

occupants which . . . covered the floor, the sink, and the toilet," combined with other

conditions, would violate the Eighth Amendment)).

Further, the failure to provide prisoners with toiletries and other hygienic materials may

rise to the level of a constitutional violation. See Trammell v. Keane, 338 F.3d 155, 165 (2d

Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and

especially toilet paper, can rise to the level of unconstitutional conditions of confinement

. . . ."); see also, Atkins v. Cnty. of Orange, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The

failure to regularly provide prisoners with . . . toilet articles including soap, razors, combs,

toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners

constitutes a denial of personal hygiene and sanitary living conditions." (internal quotations

marks and citations omitted)).  Availability of hygienic materials is particularly important in

the context of otherwise unsanitary living conditions.  See, MacDougall, 473 F.2d at 977–

978.

In this case, Graziano does not address the merits of Lee's allegations concerning his

conditions of confinement.  Lee contends that the showers are unsanitary and overflowing

with human waste that makes contact with his one leg.  Further, Lee alleges that no

supplies are given to clean the shower, even upon the inmate's requests.  Trammell, 338

13

F.3d at 165. Moreover, Lee contends that these conditions caused him to contract infections on his foot. Given these allegations, Lee has plausibly alleged that his conditions of confinement at Greene Correctional deprived him of the minimal civilized measure of life's necessities and subjected him to unreasonable health and safety risks.

Accordingly, Lee's Eighth Amendment claim based on his conditions of confinement should remain in this action.

### D. Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F. 2d 698, 704–05 (2d Cir. 1991) (citing inter alia FED. R. CIV. P. 15(a) (leave to amend "shall be freely given when justice so requires")); see also Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). As discussed supra, due to the existing questions of fact and need for more specific information, it is recommended that Lee be granted leave to amend in order to attempt to plead facts that would better support his claim.

In formulating a new, amended complaint, plaintiff is advised that the law in this Circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" Hunt v. Budd, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (internal quotations admitted). In his amended complaint, Lee must

14

clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

Furthermore, if properly plead, Lee may state a plausible claim under Title II of the Americans with Disabilities Act ("ADA"), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Viewing the facts in the light most favorable to plaintiff, Lee was not accommodated with a shower chair or railings, which he claims prevented him from showering while at Greene Correctional. If true, this may amount to exclusion from participation in services of a public entity by reason of a disability and Lee could plausibly allege an ADA claim arising from the same nucleus of facts as that of this action. See 42 U.S.C. § 12132; Carrasquillo v. City of New York., 324 F. Supp. 2d 428, 443 (S.D.N.Y. 2004).

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Graziano's motion for judgment on the pleadings (Dkt. No. 20) be **DENIED**.

It is further recommended that if this Report and Recommendation is adopted, Lee be

given thirty days from any such order allowing for an opportunity to amend his complaint to include an ADA claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  July 9, 2013
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge